**REVISED JUNE 6, 2019**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-40320

United States Court of Appeals
Fifth Circuit

**FILED**
May 16, 2019

Lyle W. Cayce
Clerk

THE LAW FUNDER, L.L.C.,

     Plaintiff - Appellee

v.

SERGIO MUNOZ, JR.; LAW OFFICES OF SERGIO MUNOZ, JR. P.C., doing business as Munoz Law Firm,

     Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Texas

Before KING, SMITH, and WILLETT, Circuit Judges.

PER CURIAM:

The Law Funder, L.L.C., sued Sergio Munoz, Jr., and his law firm for legal malpractice. Finding a series of discovery violations and related malfeasance, the district court struck Munoz's answer. Munoz did not move to replead, and the district court entered default judgment against him. The district court then held a bench trial on damages and awarded Law Funder nearly $3 million. Munoz appeals, challenging both the default judgment and the district court's award. We AFFIRM the district court's entry of default judgment against Munoz. But because we conclude the district court

No. 18-40320

improperly calculated damages under Texas law, we VACATE the district court's final judgment and REMAND for a new trial on damages.

## I.

## A.

The Law Funder, L.L.C., ("Law Funder") is a litigation-financing firm. It grants nonrecourse loans to plaintiffs and attorneys to cover the expenses of lawsuits in exchange for the rights to portions of the lawsuits' eventual winnings. As relevant here, Law Funder held rights to portions of the proceeds of 21 lawsuits litigated by Servicios Legales de Mesoamerica S. de R.L. ("SLM"), a Mexican law firm. Seeking to protect its investments into SLM's litigation, Law Funder intervened in a Texas state-court divorce proceeding involving Wilfrido Garcia, who had an ownership interest in SLM that became part of the marital estate.

The state court ordered a number of law firms and attorneys to pay litigation debts owed to SLM. Only one attorney complied, so the state court appointed receivers to locate and collect the remainder of the debts owed to SLM. Several of SLM's creditors intervened in the Garcia divorce and claimed entitlement to the funds the receivers collected, although testimony below established that Law Funder's claim was the most substantial. Law Funder retained several attorneys, including defendants Sergio Munoz, Jr., and his law firm, Law Offices of Sergio Munoz, Jr., P.C., (collectively, "Munoz") to help locate these funds and secure their ultimate disbursement to Law Funder.

Unbeknownst to Law Funder, Munoz had a close professional relationship with Judge Jesus Contreras, who was presiding over the Garcia divorce: Munoz and Judge Contreras were coprincipals in a professional corporation, Contreras & Munoz, P.C. About a year after Law Funder retained Munoz, an intervenor in the Garcia divorce with a competing claim to the SLM receiver funds discovered this conflict and moved to disqualify Judge

No. 18-40320

Contreras. A different state-court judge heard the motion and ordered Judge Contreras disqualified. The state court subsequently voided all orders Judge Contreras had entered in the case, including the order appointing the receivers. At this point, Law Funder had expended almost $2 million in attorney fees and expenses trying to collect SLM's debt. Left without enough funding to start over, Law Funder ceased pursuing its claims in the Garcia divorce.

## B.

Invoking the district court's diversity jurisdiction, Law Funder brought the present suit against Munoz for negligence, breach of fiduciary duty, and legal malpractice under Texas law. Munoz filed an answer, and the case proceeded to discovery. The district court later found Munoz committed a litany of discovery violations and other procedural transgressions. Because the district court had a front-row seat to the saga below, we quote its description of events at length:

> Plaintiff served Defendants with its first request for production on May 29, 2015. Due to Defendants' failure to produce any documents, Plaintiff subsequently filed a motion to compel production. Thereafter, Defendants promised to act in good faith and turn over appropriate documentation. In light of this promise, Judge Randy Crane ordered Defendants "to produce any relevant, unprivileged documents in their possession as indicated in their objections and responses to Plaintiff's first request for production within fourteen days of this order . . . ."

> Two months later, Plaintiff moved for sanctions on the ground that Defendants had not complied with this order. The Court subsequently permitted David Calvillo, then counsel of record, to withdraw but abated the case for 30 days to allow Defendants to obtain new counsel. Despite the fact that the abatement ended on May 12, 2016, no appearance was made by counsel at that time. The Court held a hearing on June 6, 2016 to discuss the pending motion for sanctions, but Defendants did not appear. Nevertheless, the Court ordered Defendants to produce

certain documents requested by Plaintiff in its first request for production, most notably certain electronic documents. Defendants, through their new counsel, subsequently requested an extension of time to comply with the production order, claiming that Counsel had just been retained. No other explanation was given for the request, thus the Court denied the request. The Court thereafter held a hearing on September 13, 2016 to discuss the status of the case but Defendants again failed to appear. The Court reset the hearing to October 18, 2016 at which time the Court was made aware that Defendants had never produced the electronic documents which the Court had ordered Defendants to produce. The Court ordered Defendants to tender the electronic documents to Plaintiff within three days of the October 1, 2016 status conference, or else it would consider sanctions upon Plaintiff's motion.

Plaintiff also served Defendants with its second request for production on September 8, 2016. Defendants never responded, and Plaintiff's counsel raised this issue with the Court during the October 18, 2016 status conference. The Court ordered Defendants to respond to Plaintiff's second request for production within three days of that hearing, and warned Defendants that failure to timely respond could result in sanctions. Exactly three days later, at 12:40 P.M., Plaintiff filed its second motion for sanctions, stating that "Defendants have still not fully complied with the Court's original order compelling the production of documents and had not responded to Plaintiff's second request for production." It is not entirely clear from the face of Plaintiff's motion whether Defendants have yet tendered the electronic documents identified in Plaintiff's first production request.

The Court observes more generally that Defendants have materially impeded the discovery process and therefore resolution of this case. Defendants asserted perfunctory objections to many of Plaintiff's requests for production and were uncooperative in scheduling depositions. The Court thus had to order Defendants to appear for their depositions. Also, Defendants failed to adequately respond to Plaintiff's request for admissions, because they copied and pasted the same "vagueness" objection to twenty-nine of the thirty-six admissions requests. Defendants and Defendants' counsel have also failed to appear or have arrived late at three

> hearings held specifically for the purpose of resolving discovery disputes. Plaintiff's counsel also informs the Court that Defendants failed to "produce a single document" in response to Plaintiff's subpoena duces tecum. In sum, this case was filed in federal court in December of 2014, and after almost two years, discovery has not been completed.

(omission in original) (footnotes omitted).

As alluded to in the above-quoted passage, Law Funder filed a second motion to sanction when Munoz failed to meet the district court's deadline to comply with Law Funder's second request for production. Law Funder represented in its motion that Munoz objected to sanctions, but Munoz failed to file an opposition. After noting Munoz's litany of litigatory misbehavior and failure to oppose Law Funder's motion, the district court determined a sanction was warranted under Federal Rule of Civil Procedure 37(b)(2)(A). The district court applied the four-factor test for weighing a sanction for failing to make a required evidentiary disclosure that we articulated in *United States v. Garza*, 448 F.3d 294 (5th Cir. 2006): "(1) the reasons why the disclosure was not made; (2) the amount of prejudice to the opposing party; (3) the feasibility of curing such prejudice with a continuance of the trial; and (4) any other relevant circumstances." *Id.* at 299-300. It concluded that the reason for Munoz's disobedience was unclear, that the delay and expense caused by his violations prejudiced Law Funder, and that continuing the case would only exacerbate that prejudice. The district court further found all other relevant circumstances "weigh[ed] heavily in favor of sanctions." Specifically, it noted that Munoz "is an attorney who should fully understand the need to comply with the Federal Rules of Civil Procedure and the need to cooperate in discovery" and that he had "unreasonably and systematically prolonged this case almost from inception."

No. 18-40320

The district court then concluded that the most appropriate sanction was to strike Munoz's pleadings. In reaching this conclusion, the district court cited the extent of Munoz's violations and his attempts to systemically undermine discovery. It also observed that striking Munoz's pleadings was particularly warranted because Munoz thwarted Law Funder's attempts to gather evidence about his relationship with Judge Contreras, jeopardizing Law Funder's ability to prove its claims.

In striking Munoz's pleadings, the district court did not say whether it would entertain a motion from Munoz to replead. Munoz filed no such motion. Law Funder then moved for default judgment against Munoz. Law Funder again indicated that Munoz opposed the motion, but Munoz again failed to respond. The district court instructed the clerk of the court to enter a default against Munoz. It subsequently examined Law Funder's pleadings, determined they sufficiently stated a legal-malpractice claim under Texas law, and entered a default judgment holding Munoz liable to Law Funder.

## C.

Following Munoz's default, the case proceeded to a bench trial on damages. Law Funder presented three witnesses: its managing member; Michael Smikun, Law Funder's coordinating counsel in the Garcia divorce;[1] and an attorney proffered as an expert on legal-malpractice damages. Law Funder's expert testified that Law Funder's damages totaled to $2,988,660.61. He reached this figure by combining the following:

> (1) $1,767,430 for the cost Law Funder incurred in the Garcia divorce (including reasonable and necessary attorney fees paid to Law Funder's counsel), excluding payments to Munoz;

---

[1] Smikun is also counsel of record for Law Funder in this appeal.

No. 18-40320

(2) $1,200,000 that Law Funder would have collected if the receivership order was not vacated; and

(3) $21,230.61 Law Funder paid to Munoz.

Munoz did not present any witnesses.

The district court entered final judgment in favor of Law Funder and awarded it $2,988,660.61—the same figure presented by Law Funder's expert—without further explanation. Munoz then filed separate motions for a new trial and for relief from judgment. The district court denied both motions. Munoz appeals.

## II.

We first consider Munoz's argument that the district court improperly struck his pleadings. Rule 37(b)(2)(A) allows a district court to impose a sanction when a party fails to comply with a discovery order, and the court has broad discretion in fashioning its sanction when it does so. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012). We thus review a Rule 37(b)(2)(A) sanction for abuse of discretion. *United States v. $49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003). We review the district court's factual findings underpinning its sanction order for clear error. *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460 (5th Cir. 2010).

Our caselaw imposes a heighted standard for litigation-ending sanctions (sometimes called "death penalty" sanctions). For a lesser sanction, we broadly require the district court to determine the sanctions are "just" and "related to the particular 'claim' which was at issue in the order to provide discovery." *Compaq Comput. Corp. v. Ergonome Inc.*, 387 F.3d 403, 413 (5th Cir. 2004) (quoting *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)). But the district court must make four additional findings to impose a litigation-ending sanction: (1) the discovery violation was committed willfully

No. 18-40320

or in bad faith; (2) the client, rather than counsel, is responsible for the violation; (3) the violation "substantially prejudice[d] the opposing party"; and (4) a lesser sanction would not "substantially achieve the desired deterrent effect." *FDIC v. Conner*, 20 F.3d 1376, 1380-81 (5th Cir. 1994).

Munoz argues that the district court abused its discretion by striking his pleadings because it did not consider the four factors we articulated in *Conner*. But in failing to oppose Law Funder's motion to sanction, Munoz has forfeited any argument that the district court's sanction order was improper. *See State Indus. Prods. Corp. v. Beta Tech. Inc.*, 575 F.3d 450, 456 (5th Cir. 2009) ("Under our general rule, arguments not raised before the district court are waived and will not be considered on appeal unless the party can demonstrate 'extraordinary circumstances.'" (quoting *N. Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 916 (5th Cir. 1996))); *see also, e.g.*, *Quest Med. v. Apprill*, 90 F.3d 1080, 1088 (5th Cir. 1996) ("We are a court of errors, and will not consider matters raised for the first time on appeal, unless our failure to do so would result in manifest injustice."). Munoz's citation to *Colonial Penn Insurance v. Market Planners Insurance Agency Inc.*, 157 F.3d 1032 (5th Cir. 1998), does not save him from the inevitable. In *Colonial Penn*, we held that a litigant need not specifically move under Federal Rule of Civil Procedure 50 to preserve a sufficiency-of-the-evidence argument following a bench trial (as a litigant would need to do following a jury trial). *See id.* at 1036. Munoz cites to no authority suggesting we should except him from the normal rule that parties must raise any arguments below that they seek to press on appeal.[2]

---

[2] Munoz does not argue that he preserved his *Conner* argument by raising it in his postjudgment motions, nor does he otherwise argue the district court erred in denying those motions. *Cf. Williams v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 470 F. App'x 309, 313 (5th Cir. 2012) (unpublished) ("Motions to reconsider 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003))).

We may reverse on a forfeited argument when the district court has committed plain error. *See Crawford v. Falcon Drilling Co.*, 131 F.3d 1120, 1123 (5th Cir. 1997). Munoz makes no argument that the district court's sanctions order amounted to plain error, and we conclude it did not. Even assuming the district court abused its discretion in failing to apply the *Conner* factors when weighing whether to strike Munoz's pleadings, its error was not "clear or obvious." *Jimenez v. Wood County*, 660 F.3d 841, 847 (5th Cir. 2011) (en banc) (quoting *United States v. Ellis*, 564 F.3d 370, 377-78 (5th Cir. 2009)). It might be an obvious abuse of discretion to fail to consider the *Conner* factors in assessing a litigation-ending sanction, but it was not obvious that the district court assessed a litigation-ending sanction in striking Munoz's pleadings. As the district court noted, it did not grant default judgment in its sanctions order; it did so more than a month later in a separate order and upon Law Funder's separate motion (which Munoz again failed to oppose). Even then, the district court did not grant the motion as a mere formality—it substantively analyzed Law Funder's complaint to ensure default was warranted. Moreover, the record is silent as to whether the district court would have in the interim entertained a motion from Munoz to replead (perhaps after taking steps to remedy his violations). Although we need not resolve the issue here, we observe that the cases in which we have previously treated an order striking a defendant's pleadings as a litigation-ending sanction have all suggested that it is either the simultaneous grant of default or the denial of a motion to replead that makes it a litigation-ending sanction. *See Smith v. Legg (In re United Mkts. Int'l, Inc.)*, 24 F.3d 650, 654 (5th Cir. 1994) ("Striking a defendant's answer and denying a request to replead is equally as harsh a sanction as dismissal of a plaintiff's case with prejudice . . . ."); *Pressey v. Patterson*, 898 F.2d 1018, 1021 n.2 (5th Cir. 1990) ("[S]triking the pleadings of a defendant and rendering default judgment is equally as harsh a sanction as

dismissing the case of a plaintiff with prejudice."). At best, our caselaw is unclear about whether an order striking a defendant's pleadings, without more, is a litigation-ending sanction subject to *Conner*. Accordingly, the district court did not obviously abuse its discretion in failing to apply *Conner*.

Furthermore, any error was not prejudicial to Munoz and thus may not be reversed on plain-error review. *See Crawford*, 131 F.3d at 1125. Although the district court did not apply *Conner*, its various findings strongly suggest it would have reached the same result if it did. The district court explicitly found prejudice to Law Funder in its sanctions order, and it found in its order denying Munoz's postjudgment motions that Munoz acted willfully and that lesser sanctions would not have sufficed. And although the district court did not explicitly find that Munoz was personally responsible, it implicitly found this factor, noting in its sanctions order that Munoz "is an attorney who should fully understand the need to comply with the Federal Rules of Civil Procedure and the need to cooperate in discovery." In our review of the record, none of these findings is clearly erroneous. We affirm the district court's order striking Munoz's pleadings.

## III.

We next consider Munoz's challenge to the district court's damages award. Munoz raises four issues that more or less state the same argument: the district erred in awarding Law Funder compensatory damages for attorney fees and costs that it would have incurred regardless of Munoz's negligence. Reviewing the district court's conclusions of law de novo and its findings of fact for clear error, *see Grilletta v. Lexington Ins. Co.*, 558 F.3d 359, 364 (5th Cir. 2009), we agree.

The remedy for legal malpractice under Texas law is compensatory damages, the goal of which is to put the plaintiff "in a position substantially equivalent in a pecuniary way to that which he would have occupied had no

tort been committed." *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 122 (Tex. 2009) (quoting Restatement (Second) of Torts § 903 cmt. a (Am. Law Inst. 1977)).[3] Thus, a legal-malpractice plaintiff may recover as damages "attorney's fees it paid for representation in the underlying suit, if it was the defendant attorney's negligence that proximately caused the fees." *Id.*[4] In other words, Texas law does not allow a legal-malpractice plaintiff to recover attorney fees it would have incurred regardless of the defendant's wrongdoing.

Despite a good deal of arguing past one another, the parties appear to agree on this much. The question, therefore, is whether Munoz's negligence proximately caused the attorney fees and costs Law Funder incurred while trying to collect SLM's debts in the Garcia divorce. "Proximate cause has two elements: cause in fact and foreseeability." *Id.* We are concerned here only with cause in fact, which "must be established by proof that (1) the negligent act or omission was a substantial factor in bringing about the harm at issue, and (2) absent the negligent act or omission ('but for' the act or omission), the harm would not have occurred." *Id.*

Law Funder's claim to the attorney fees and costs it incurred in the Garcia divorce stumbles on cause in fact. We fail to understand Law Funder's argument that it would not have incurred the contested fees and expenses but for Munoz's negligence. If Munoz had disclosed his relationship with Judge Contreras when Law Funder first solicited Munoz's services, then Law Funder in all likelihood would have found another attorney to take Munoz's place and

---

[3] When hearing a case under diversity jurisdiction, we apply state substantive law. *See, e.g., Block v. Tanenhaus*, 867 F.3d 585, 589 (5th Cir. 2017). The parties here agree that Texas law applies to their dispute.

[4] To the extent Munoz argues that Texas law precludes Law Funder from recovering *any* attorney fees, regardless of whether his negligence proximately caused Law Funder to incur those fees, *Akin Gump* squarely forecloses this argument.

continued to litigate its claims in the Garcia divorce. And there is no indication it would have incurred less expense in doing so. Even more confounding is the district court's apparent award of attorney fees and expenses Law Funder incurred *before* it retained Munoz: an effect cannot precede its cause.

We recognize the possibility—though remote and not well-supported by the evidence—that if Munoz had properly disclosed his conflict, then instead of finding a different attorney, Law Funder might have at that time concluded that it could not afford to seek new counsel and abandoned its claims in the Garcia divorce. In this scenario, Law Funder would not have expended the attorney fees and costs it thereafter spent fruitlessly pursuing its claims, so Munoz's negligence would have at least been a but-for cause of those damages. But if this were the case, then the district court's judgment would be in error for awarding Law Funder money it expected to recover from the SLM receivers. In that scenario, having abandoned its claims, Law Funder would have collected nothing from the SLM receivers regardless of Munoz's negligence.

In sum, Munoz's negligence might have cost Law Funder the $1,200,000 it expected to recover from the SLM receivers, or it might have cost Law Funder whatever portion of $1,767,430 it incurred after Munoz's negligence in fruitless pursuit of the SLM receiver funds. But we can envision no scenario in which Munoz's negligence cost Law Funder both. The district court accordingly issued Law Funder a double recovery by awarding it the attorney fees it spent litigating its claim in the Garcia divorce and its expected return on that litigation. To the extent the district court concluded that Texas law allowed it to award the attorney fees and expenses Law Funder incurred in the Garcia divorce regardless of whether Munoz's negligence proximately caused those fees and expenses, it erred as a matter of law. To the extent the district court found as a factual matter that Munoz's negligence proximately caused Law

Funder to both incur attorney fees and costs litigating the Garcia divorce and lose its claims to the SLM receiver funds, the district court clearly erred.

Law Funder also suggests that inquiry into whether Munoz's negligence proximately caused its damages is improper because Munoz's default judgment established proximate cause. We do not agree. A default judgment establishes the defendant's liability but not the quantity of damages. *United States ex rel. M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Thus, while the default judgment established that Munoz proximately caused Law Funder *some* harm, the district court must apply Texas law to determine the quantity of those damages. *Cf. id.* at 1016 (remanding defaulted contract claim for new damages calculation because default judgment established plaintiff performed but not whether plaintiff substantially performed, affecting particular damages plaintiff could recover under Texas law). And as already established, proximate cause is a necessary component of the damages calculation under Texas law. *See Akin, Gump*, 299 S.W.3d at 122. The district court must therefore determine whether Munoz's negligence proximately caused the specific damages Law Funder claims.

We accordingly vacate the district court's damages award.[5] On remand, the district court should allow Munoz to present evidence and conduct cross-examination relevant to whether his negligence proximately caused Law Funder's claimed damages.

As a final note, we provide two caveats to our above analysis. First, we do not foreclose the possibility that Munoz's negligence proximately caused Law Funder to incur *any* attorney fees or costs in the Garcia litigation. If Law Funder spent money contesting the disqualification order, for example, then

---

[5] Because we vacate the district court's award, we have no occasion to consider Munoz's arguments that the district court failed to make sufficient findings in support of the judgment and failed to provide adequate notice of the damages trial.

No. 18-40320

Munoz's negligence was at least the factual cause of those damages because there would have been no motion to disqualify Judge Contreras but for Munoz's undisclosed conflict. Second, our opinion should not be read to prevent Law Funder from recovering as a fee forfeiture the $21,230.61 it paid Munoz for his services in the Garcia divorce. Texas law authorizes fee forfeiture as independent damages for breach of fiduciary duty regardless of causation. *See Liberty Mut. Ins. Co. v. Gardere & Wynne, L.L.P.*, 82 F. App'x 116, 120 (5th Cir. 2003) (unpublished); *Burrow v. Arce*, 997 S.W.2d 229, 239-40 (Tex. 1999). Law Funder specifically requested fee forfeiture in its complaint, and its expert separately calculated these damages at trial. Munoz makes no argument on appeal that fee-forfeiture damages were otherwise improper.

## IV.

We AFFIRM the district court's entry of default judgment against Munoz, but we VACATE its damages award and REMAND for a new trial. Each party shall bear its own costs.